STATE OF NEBRASKA, APPELLEE, V. ERNEST HARPER, APPELLANT.

359 N.W.2d 806

Filed December 21, 1984.   No. 84-448.

Anthony S. Troia, for appellant.

Paul L. Douglas, Attorney General, and Linda L. Willard, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

Ernest Harper appeals from an order entered by the district court for Douglas County, Nebraska, denying his request for post conviction relief sought pursuant to the provisions of Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1979). Specifically, Harper maintains that because his trial counsel failed to object to the introduction of evidence of a subsequent crime admittedly committed by Harper in Iowa, he was denied effective assistance of counsel in violation of his constitutional rights. We have reviewed the record and conclude that the district court was correct in denying Harper's request for post conviction relief.

Harper was initially charged by information with one count of robbery, one count of use of a firearm in the commission of a felony, and two counts of first degree sexual assault, all in violation of Nebraska statutes. Following trial to a jury, he was convicted on all counts and appealed to this court. On direct appeal his conviction was affirmed. See *State v. Harper*, 215 Neb. 686, 340 N.W.2d 391 (1983) (*Harper I*). The basis of Harper's direct appeal was that the district court erred in permitting the introduction into evidence of the subsequent crime committed by Harper in Iowa. We refused to consider that assignment on the merits in *Harper I* because Harper's trial counsel did not object to the introduction of the evidence and therefore waived any objection. Harper now maintains that the failure of trial counsel to object to the introduction of the evidence constituted ineffective assistance of counsel, thereby entitling him to post conviction relief.

The specific crime for which Harper was convicted in *Harper I* involved the robbery of a restaurant, during which Harper sexually assaulted an employee of the restaurant. The evidence which was offered at trial concerned a subsequent robbery committed by Harper and three others. During the robbery, one of the restaurant's female employees was forced to disrobe,

before Harper, anxious about the amount of time spent at the restaurant, ordered his companions to flee.

In attempting to determine whether Harper's counsel failed to provide him with effective assistance, it is necessary that we consider the standards by which effective assistance is measured. In *State v. Robinson, ante* p. 156, 159-60, 352 N.W.2d 879, 881-82 (1984), quoting from the U.S. Supreme Court decision of *Strickland v. Washington,* 466 U.S. _____, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), we said:

> "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
> . . . .
>
> "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
>
> . . . .
>
> "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. *United States v. Morrison*, 449 U.S. 361, 364-365, 101 S. Ct. 665, 667-668, 66 L. Ed. 2d 564 (1981). The purpose of the Sixth Amendment guarantee of

counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."

Further, in *State v. Robinson, supra* at 160-61, 352 N.W.2d at 882, we said:

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

. . . .

"The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. . . .

"In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

Even before the U.S. Supreme Court rendered its decision in *Strickland*, this court adopted a two-part test for determining ineffective assistance of counsel. In *State v. Otey*, 212 Neb. 103,

105-06, 321 N.W.2d 453, 454-55 (1982), we said:

"Nebraska employs a two-part test for determining whether an attorney has effectively counseled a criminal defendant. First, counsel must perform at least as well as one with ordinary criminal law skill and training in his or her region. Counsel must also conscientiously protect his client's interests. *State v. Leadinghorse*, 192 Neb. 485, 222 N.W.2d 573 (1974); *State v. Lang*, 202 Neb. 9, 272 N.W.2d 775 (1978). A defendant challenging competency of counsel has the burden to establish it. *State v. Auger & Uitts*, 200 Neb. 53, 262 N.W.2d 187 (1978). In addition, defendant must show that he suffered prejudice in the defense of his case as a result of his attorney's actions or inactions. *State v. Mays*, 203 Neb. 487, 279 N.W.2d 146 (1979); *State v. Lang, supra; State v. Bartlett,* 199 Neb. 471, 259 N.W.2d 917 (1977)."

See *State v. Evans, ante* p. 849, 359 N.W.2d 790 (1984).

An examination of the record discloses that evidence of Harper's guilt presented at the trial on the merits was overwhelming and more than sufficient to convict Harper in any event. Harper was identified as the assailant through voice identification. Additionally, one of the victims identified clothing worn by Harper in the Iowa robbery as similar to the clothing worn by one of the assailants. A forensic serologist also testified that semen found on the slacks of one of the victims came from a person with the same blood type as Harper. And perhaps most important of all, Harper voluntarily took the stand and, on direct examination, admitted he had committed the Iowa crime, but maintained that because he did not assault the waitress in Iowa, he could not be guilty of assaulting the waitress in Nebraska, in effect attempting to use Neb. Rev. Stat. § 27-404(2) (Reissue 1979) in reverse. Once Harper testified on direct about the Iowa crime, he waived any objection to the earlier introduction of the Iowa crime. *Johnson v. Airport Authority*, 173 Neb. 801, 115 N.W.2d 426 (1962); *Sump v. Omaha Public Power Dist.*, 168 Neb. 120, 95 N.W.2d 209 (1959). One cannot elect a particular trial strategy and then complain if it proves unsuccessful. *State v. Evans, supra; State v. Otey, supra; State v. Bartlett*, 199 Neb. 471, 259 N.W.2d 917

(1977). We are unable to say that counsel's failure to object so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result or that if objection had been made, there is a reasonable probability that the result of the proceedings would have been different. It appears that the result of the trial would have been unchanged whether the evidence of the Iowa robbery had been admitted in evidence or not.

Harper has simply failed to show that he was prejudiced by the introduction of the evidence. For this reason, therefore, the judgment of the district court denying Harper's request for post conviction relief is affirmed.

AFFIRMED.