STATE OF NEBRASKA, APPELLEE, v. STEVEN G. HURLEY, APPELLANT.

366 N.W.2d 763

Filed May 3, 1985.    No. 84-554.

H. Jerome Kinney, for appellant.

Paul L. Douglas, Attorney General, and Mark D. Starr, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Defendant-appellant, Steven G. Hurley, appeals from the denial by the district court of his motion for post conviction relief filed pursuant to the provisions of Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1979). He assigns as error the lower court's failure to find he was denied effective assistance of trial counsel because counsel failed to interview and call his father as a witness, failed to interview other witnesses, and failed to properly consult with defendant in preparation for trial. The record fails to sustain defendant's claims, and we therefore affirm the judgment of the district court.

Defendant was charged and tried on one count of robbery and one count of using a knife to commit a felony. The jury returned a verdict of guilty as to the robbery charge and not guilty as to the second charge. He was sentenced to

incarceration in the Nebraska Penal and Correctional Complex for a period of 13 to 20 years.

Donald Hurley, defendant's father and coperpetrator, was represented by another attorney and was scheduled to go to trial with defendant. However, due to medical problems, the father was unable to proceed to trial at that time. He later, in May or June of 1983, pled guilty to a charge of theft.

At defendant's trial the victim testified that defendant and his father assaulted him in the latter's apartment, located in the basement of the victim's home. The Hurleys beat the victim and threatened him with a knife. They then escorted him upstairs into his home, where defendant held the victim while Donald Hurley loaded the victim's motorcycle into a van. The Hurleys then drove the van away, leaving the victim in his home. The victim never saw his motorcycle again.

The defense presented three witnesses who testified that they were with the defendant at the time of the incident, thereby providing him with an alibi which the jury obviously and understandably did not believe.

In order for the claim of ineffectiveness of counsel to succeed, there must be a showing of a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. The test for determining whether an attorney has effectively served a criminal defendant is twofold. Firstly, counsel must perform at least as well as one with ordinary criminal law skill and training in his or her region. Secondly, counsel must conscientiously protect his client's interests. *State v. Harper*, 218 Neb. 870, 359 N.W.2d 806 (1984). Moreover, one seeking post conviction relief has the burden of establishing the basis for such relief, and the findings of the district court will not be disturbed on appeal unless they are clearly erroneous. *State v. Hochstein*, 216 Neb. 515, 344 N.W.2d 469 (1984).

We consider first the claimed failures of trial counsel, Mr. Ivory Griggs, then of the Douglas County public defender's office, to interview witnesses other than the father and to "properly" consult with defendant, for they are resolved quickly. Even if the record were to support those claims, and it does not, nowhere does the record establish either the testimony

expected from the uninterviewed witnesses or what additional consultation with defendant would have changed. In the absence of such a record, defendant can show no prejudice by the claimed failures; consequently, to the extent his allegation of ineffective counsel rests upon those claims, it fails. *State v. Hill*, 214 Neb. 865, 336 N.W.2d 325 (1983) (holding that prejudice was not established by the alleged failure to call witnesses in the absence of showing what the witnesses' expected testimony would be or to investigate identification procedures in the absence of showing a defect in the procedures).

This leaves only defendant's complaint that Griggs failed both to interview and to call Donald Hurley as an alibi witness at trial.

Griggs met with defendant on three occasions between March 18, 1983, when defendant was arraigned, and April 4, 1983, when defendant's trial began. Griggs' testimony at defendant's post conviction hearing was that at their first meeting defendant demanded to see the police reports of the incident and informed Griggs that he wanted to use an alibi defense. At that time Griggs asked defendant who the witnesses were. Defendant told Griggs that he would be told when he needed to know.

At their second meeting, according to Griggs, he and defendant discussed a motion to sever defendant's trial from that of his father; Griggs was concerned about what the father might say at a joint trial, since defendant said he did not know. Even on this occasion, defendant refused to give Griggs the names of his alibi witnesses and did not mention his father as such a witness.

Although defendant's testimony contradicted Griggs' recitation of what occurred at their second meeting with respect to the identification of witnesses, defendant did admit that he did not tell Griggs what his father's testimony would be, as he had not talked with him. Defendant also testified he thought that he called Griggs sometime between March 31 and April 4, 1983, to tell him that his father wanted to testify that defendant had not been involved in the crime. However, on cross-examination, defendant said that he had learned what his father would say approximately 10 days to 2 weeks prior to

March 31, 1983. This statement contradicts defendant's earlier statement that he did not tell Griggs the content of his father's expected testimony at their second meeting because he did not know what his father would say.

At trial defendant himself made a number of motions concerning the calling of witnesses, and made complaints about Griggs' conduct of the trial. On none of these occasions did defendant mention his father as one of the witnesses who should be called.

Griggs did not interview Donald Hurley, but had made an unsuccessful attempt to reach him at the hospital where he was a patient, not because defendant asked it, but because Griggs wanted to learn what Donald Hurley's testimony would be. In Griggs' opinion self-defense was defendant's best argument; he was hoping the father could support that defense and could also help convince defendant to give up his alibi defense. In counsel's professional judgment an alibi defense was not a good one in light of the fact that the victim knew both defendant and the father, having seen both on a number of occasions.

From his unsuccessful effort Griggs surmised that Donald Hurley's attorney did not want the latter to testify at defendant's trial because, in order to do so, Donald Hurley could jeopardize his own case. Donald Hurley did testify by deposition at defendant's post conviction hearing that had he been called as a trial witness, he would have testified that defendant was not present at the time the crime was committed and that he (Donald Hurley) alone was involved in the robbery of the motorcycle. However, in a presentence investigation report dated June 15, 1983, Donald Hurley, after defendant's trial and after Donald Hurley had pled guilty, stated that both he and defendant took the victim's motorcycle and that defendant assaulted and beat the victim. Later, on July 6, 1983, Donald Hurley telephoned the police, saying he wanted to change his earlier statement, and went on to claim at that time that he had taken the motorcycle by himself and that defendant had not been with him. On July 27 he submitted a written statement to the same effect.

Under these circumstances we conclude that Griggs was not ineffective by not interviewing and not calling Donald Hurley

as a witness at defendant's trial. It appears that Donald Hurley was not about to say anything, true or otherwise, to attempt to extricate defendant until his own fate had been determined. Moreover, Donald Hurley's testimony, if such were forthcoming, would only have been cumulative to that of the other three alibi witnesses and would have had even less probative value than the testimony of those not involved in the crime and who presumably had not made earlier inconsistent statements. Griggs more than met the standard imposed upon him. Indeed, the fact that he was able to convince the jury to acquit defendant on the charge of using a knife to commit a felony itself convinces us that counsel performed as well as one with ordinary criminal law skill and training is expected to perform anywhere and that he conscientiously protected defendant's interests.

The judgment of the trial court is correct and is affirmed.

AFFIRMED.