STATE OF NEBRASKA, APPELLEE, V. MARK G. ANDERSEN,
APPELLANT.
440 N.W.2d 203

Filed May 19, 1989.    No. 87-1133.

188

Daniel W. Ryberg for appellant.

Robert M. Spire, Attorney General, and Lynne R. Fritz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Mark G. Andersen appeals his jury convictions and sentences on two charges of first degree sexual assault and three charges of sexual assault on a child. The victims were three preteenage boys in Omaha, J.M., B.T., and S.M. We affirm all of the convictions and sentences.

The charges were brought in five separate informations, which were consolidated for trial.

On each first degree sexual assault case, the defendant received an indeterminate prison sentence of 2 to 4 years, one to run consecutively to the other. On each charge of sexual assault on a child, Andersen received indeterminate sentences of not less than 1 nor more than 2 years' imprisonment. Two of the sexual assault on a child sentences were ordered to be served concurrently with a first degree sexual assault sentence. The third was ordered to be served consecutively to the first degree sexual assault sentences. Andersen's sentences total a term of not less than 5 nor more than 10 years of imprisonment.

First degree sexual assault is a Class II felony carrying a penalty of up to 50 years with a minimum of 1 year's imprisonment. Neb. Rev. Stat. §§ 28-319(1)(c) and 28-105 (Reissue 1985). Sexual penetration is an essential element of sexual assault in the first degree. A person commits sexual assault on a child if he or she subjects another person 14 years of age or younger to sexual contact and the actor is at least 19 years of age or older. "Sexual contact" means the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts. Neb. Rev. Stat. § 28-318 (Reissue 1985). The crime is a Class IV

felony and carries a penalty of up to 5 years' imprisonment, up to a $10,000 fine, or both.

Andersen assigns as error that (1) he was denied a speedy trial; (2) testimony of the three victims should have been suppressed; (3) the five informations should not have been consolidated for trial; (4) the following evidence should not have been admitted: (a) testimony regarding Andersen's homosexuality and his entertainment of teenagers in his home, (b) testimony regarding Andersen's references to a movie projector and to police reports of other investigations, and (c) testimony regarding the contents of movies shown to the victims by Andersen; (5) evidence of one victim's mother's false report of a similar incident should have been admitted; (6) defendant's motions for a mistrial should have been sustained; (7) there is not sufficient corroboration of the victims' testimony; (8) defendant's motions for a directed verdict and a new trial should have been sustained; (9) the trial court failed to give the defendant's proposed instruction on his theory of the case; and (10) the trial court abused its discretion in imposing consecutive sentences.

## STATEMENT OF FACTS

In reviewing a criminal conviction, it is not the province of the Supreme Court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. See, *State v. Batiste*, 231 Neb. 481, 437 N.W.2d 125 (1989); *State v. Tatara*, 230 Neb. 279, 430 N.W.2d 692 (1988).

Taking the view most favorable to the State, a jury could find that the State proved the following facts beyond a reasonable doubt.

Andersen at time of trial was a 38-year-old homosexual male; his alleged victims, J.M., B.T., and S.M., testified truthfully to Andersen's sexual behavior toward them; and at the time the offenses occurred, J.M. and S.M. were each 11 years old, and B.T. was 12 years old.

All three boys testified to going to Andersen's house to spend the night. Sometimes two of the boys were alone and, at least

once, all three were in a group. Two of the boys testified that a normal evening was to watch movies on Andersen's VCR and then to go to sleep, usually in Andersen's bed. Sometimes, the boys also ate dinner with Andersen.

The boys related watching sexually explicit movies late into the night. The boys testified that when they did go to sleep, they were awakened later by Andersen's sexual advances.

J.M. testified he met the defendant through his cousin, B.T., and B.T.'s friend, S.M. J.M. told the jury that he, B.T., and S.M. spent a night at Andersen's together. There was evidence that a young girl was also present. The youngsters watched movies, then went to bed. The room in which they slept served as Andersen's living room and bedroom. Furniture included a TV, VCR, a bookshelf full of videocassettes, and one bed with a separate mattress stored underneath. On this particular evening, J.M. was sleeping on the floor in front of the television. He awoke. Andersen's hands were inside the boy's pants touching his buttocks, J.M. testified. J.M. spent one other night at Andersen's residence. He stayed awake all night and refused to return to Andersen's residence.

S.M.'s testimony corroborated the above version of the one night at Andersen's house. He also told of staying one night when B.T. was also present. After that, Andersen insisted that the boys come alone to spend the night. A typical evening for S.M. involved watching movies and going to bed. The defendant, who was naked, insisted that S.M. wear only underwear and sleep with Andersen in the bed, which was a single-sized, one-person bed.

On one occasion, S.M. awakened to an X-rated movie on the VCR and Andersen masturbating himself. S.M. told the jury Andersen also attempted to masturbate S.M. S.M. testified he stayed with the defendant many times over a period of several months and that every time, the defendant engaged S.M. in sexual acts. S.M. told the jury that the sexual activity progressed until one night S.M. was awakened when Andersen stuck his penis into S.M.'s rectum. The defendant also stuck his tongue in the boy's rectum and placed his mouth on S.M.'s penis, according to S.M.'s testimony.

B.T. also corroborated J.M.'s version of the night all three

boys stayed at Andersen's residence. As well, B.T. corroborated S.M.'s statement that Andersen insisted the boys stay with him alone. B.T. testified that when he stayed with Andersen, he too encountered sexual acts similar to those suffered by S.M.

B.T. was also required to sleep in his underwear on Andersen's one-person bed while Andersen slept naked. B.T. testified he awakened and found the defendant's hand in the boy's underwear masturbating him. Andersen also put his mouth on B.T.'s penis and inserted his own penis in B.T.'s rectum, B.T. told the jury.

B.T. testified that between June or July of 1984 and early December 1985, on almost every weekend, both he and S.M. had spent overnight with Andersen at the defendant's home. B.T. said he and S.M. visited the defendant on different nights of the weekend. B.T. testified that there was never a time when he visited Andersen overnight that a sex act did not occur. S.M. testified he stayed overnight with the defendant weekly during the summer and every other week during the school year. Andersen testified that during the year-and-a-half period, the number of times the boys stayed overnight with him may have totaled about 60.

Andersen testified in his own behalf. He corroborated the boys' testimony in substantial detail, except he denied that any sexual activity occurred between him and the boys. Andersen testified that the movies shown to the boys were R rated. He admitted that some had sexual content inappropriate for 11- and 12-year-old boys.

## SPEEDY TRIAL

Andersen first claims the trial court erred in failing to dismiss the charges for lack of a speedy trial. Neb. Rev. Stat. § 29-1207 (Reissue 1985) provides that every person charged with a criminal offense shall be brought to trial within 6 months. For certain reasons the time is extended. The 6-month period commences when an information is filed. The five informations in this case were filed on January 23, 1986. On July 15, 1986, 8 days before the 6-month time period expired, Andersen filed a waiver of his statutory right to a speedy trial. The defendant filed revocations of his waiver on January 6 and 30, 1987. Trial commenced on September 8, 1987.

In alleging that his right to a speedy trial was abridged, Andersen raises three arguments: (1) that his waiver of his statutory speedy trial right was involuntary and ineffective; (2) that even if his waiver was valid, he properly revoked it, leaving the State 8 days to bring him to trial; and (3) that his state and federal constitutional guarantees of a speedy trial were violated by the unreasonable delay as alleged. We find all of these arguments to be without merit.

This court has held that a defendant may waive his right to a speedy trial under § 29-1207 so long as he is properly advised of his right to a speedy trial and the waiver is entered voluntarily, knowingly, and intelligently. See *State v. Williams*, 211 Neb. 650, 319 N.W.2d 748 (1982). Cf., *State v. Kennedy*, 224 Neb. 164, 396 N.W.2d 722 (1986); *State v. Rogers*, 208 Neb. 464, 303 N.W.2d 788 (1981). Once a trial court has accepted a defendant's waiver of his statutory right to a speedy trial, the burden of proving that the waiver is invalid is upon the defendant to show by a preponderance of the evidence that he did not voluntarily, knowingly, or intelligently waive his right to a speedy trial. See *State v. Rogers, supra.*

It is clear from the record that Andersen was told of his right to a speedy trial. It is also clear that his waiver of that right was entered voluntarily, knowingly, and intelligently.

Andersen claims he was told that if he did not waive his right to a speedy trial, he would have to be tried without a jury. This contention is not supported by the record. At the time Andersen revoked his waiver, Andersen's counsel told the trial judge that the waiver of a speedy trial was entered for the purpose of waiting for this court's decision in *State v. Carlson*, 223 Neb. 874, 394 N.W.2d 669 (1986). *Carlson* involved issues which, if decided favorably to defendant Carlson, would have benefited Andersen in the instant cases. Andersen failed to meet his burden of proving invalid his waiver of his statutory right to a speedy trial.

Whether a defendant's waiver of his right to a speedy trial may be revoked or terminated has not been decided by this court. Andersen urges that a defendant should be permitted to revoke his speedy trial waiver at any time. Under Andersen's proposed rule, the State would be required to bring the

defendant to trial within the time remaining in the original 6-month calculation, subject to § 29-1207(4)(f). That subsection provides that time may be excluded from the 6-month calculation if the court finds the delay is for good cause.

The State argues that Andersen's proposed rule would permit defendants to manipulate both the State and the trial court by choosing when to waive the 6-month speedy trial right and when to revoke the waiver. Applied to the facts of this case, Andersen's proposed rule would have given the State 8 days to bring him to trial after his waiver was revoked. This would not be sufficient time to prepare a case of this magnitude for trial. Such a rule would be prejudicial to the State. We decline to adopt the defendant's proposed rule.

We hold that a defendant may terminate his waiver of a speedy trial by filing a written request for trial with the clerk of the court in which the defendant is to be tried. The defendant shall serve a copy of the written request for trial upon the prosecutor. The clerk of the court, immediately upon receipt of the request for trial, shall also forward a copy of it, together with the date of filing, to the trial judge and to the prosecutor's office. From the date the defendant files his written request for trial, the 6-month period for the State to bring a defendant to trial provided in § 29-1207 shall begin anew.

In this case, when the time periods attributable to the defendant's pretrial motions are deleted pursuant to § 29-1207, it is clear that the State brought Andersen to trial within a 6-month period after he terminated his waiver of a speedy trial. According to the defendant's own calculations (in his brief at page 17), the trial commenced at most within 164 days, excluding defense delays, following the termination of Andersen's waiver. Andersen's statutory right to a speedy trial was not violated.

Andersen also argues that his state and federal constitutional rights to a speedy trial were violated. The constitutional right to a speedy trial and the statutory implementation of that right under § 29-1207 exist independently of each other. Determining whether a defendant's constitutional right to a speedy trial has been violated requires a balancing test in which courts must

approach each case on an ad hoc basis. This balancing test involves four factors: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, the factors are related and must be considered together with such other circumstances as may be relevant. Under the provisions of the U.S. and Nebraska Constitutions, the right to a speedy trial is relative and depends upon circumstances; it is not denied where the delay is satisfactorily explained by the government and the defendant was brought to trial as soon as was reasonably possible. See, *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473 (1989); *State v. Gingrich*, 211 Neb. 786, 320 N.W.2d 445 (1982); *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct 2182, 33 L. Ed. 2d 101 (1972).

As already discussed, any delay in bringing Andersen to trial was occasioned by the defendant's waiver of his right to a speedy trial for strategic reasons. After Andersen revoked his waiver, the case proceeded to trial in a normal manner and without unreasonable delay. Andersen primarily argues that he was prejudiced by the deaths of his original attorney and of K.E., S.M.'s father and a potential defense witness. Andersen also argues that he was prejudiced in that his career as a real estate appraiser suffered, leading to financial hardship.

The right to a speedy trial is different from other constitutional rights in that deprivation of the right is not per se prejudicial to the accused, and may work to the defendant's advantage. See *Barker v. Wingo, supra.* Delay is a common defense tactic and was employed in this case. During a delay, witnesses sometimes become unavailable. Memories of other witnesses fade. If the witnesses support the prosecution, its case may be weakened, a distinct advantage for the defense. However, there is an equal possibility that the defense could be weakened by loss of witnesses.

In this case, the defense employed a tactical delay. It may have backfired in that the defense attorney and one witness died. This is a risk that is taken by whoever occasions the delay, whether it be prosecution or defense. Further, the record does

not reflect that the deaths of these two individuals had any appreciable effect on the defendant's case.

Lynn Carey, the defendant's original attorney, suffered from cancer and died in December of 1986. His death was not unexpected, and Andersen's present attorney entered his appearance in the case in January of 1987. Andersen makes no showing that present defense counsel was not as effective or as familiar with the case as Carey would have been had he lived and tried the case.

Similarly, the death of K.E. did not seriously weaken Andersen's defense. According to Andersen, his friend K.E. could have impeached the testimony of S.M. and his mother, S.E., K.E.'s wife. Through K.E.'s testimony, Andersen claims, he would have established that S.M.'s testimony was the result of coaching by his mother. The theory that S.M. was coached by his mother in order to obtain money from the defendant was raised by defense counsel during cross-examination of S.E. and also through the testimony of Glen Woodruff, a friend of K.E.'s. Clearly, the jury chose not to believe this theory. K.E.'s testimony would have only been cumulative to Woodruff's testimony.

Andersen was not prejudiced either by the death of his attorney or by the death of K.E.

Andersen claims that the delay in his being tried brought personal and professional hardship on him which was prejudicial. All persons accused of a crime suffer some detrimental impact. The record shows that, at least between July of 1986 and January of 1987, Andersen did not want a speedy trial. Barring extraordinary circumstances, a defendant's constitutional right to a speedy trial is not denied when the defendant does not want a speedy trial. See *Barker v. Wingo, supra.* In *Barker,* the defendant was not brought to trial for more than 5 years after he was arrested. He waived his right to a speedy trial for strategic reasons. As here, the defendant Barker was awaiting the outcome of another trial and appeal therefrom. The U.S. Supreme Court held that under these circumstances the State did not deny Barker a speedy trial.

Under the circumstances of this case, Andersen was denied neither his statutory nor his constitutional right to a speedy

trial.

## INEVITABLE DISCOVERY OF WITNESSES

Andersen's second assigned error claims the trial court erred in finding that B.T. inevitably would have been discovered and would have led officers to both S.M. and J.M.

On December 3, 1985, in connection with an unrelated child pornography investigation, the defendant's residence was searched by law enforcement officers and an address book confiscated. In the address book, officers found the name of K.E., S.M.'s father. The officers contacted K.E. and interviewed S.M. S.M. led officers to his friends B.T. and J.M. At that time, S.M. did not tell the officers that Andersen had sexually assaulted him. The next day S.M. told his mother of the assaults, and she called the police.

Andersen filed a motion to suppress the items taken during the search of his residence. After a hearing, the trial court ruled the search was illegal and ordered the address book suppressed. Later, Andersen filed a motion to dismiss the informations in the instant cases, claiming the testimony of B.T., J.M., and S.M. should be suppressed. The defendant claimed it was fruit of the illegal search. The trial court treated this pleading as a motion to suppress the testimony of the three boys.

At the hearing regarding suppression of the boys' testimony, Police Officer Robert Sklenar testified he was assigned to investigate a child pornography ring during the latter part of 1985. The investigation began on November 11, 1985, and involved 22 suspects, including the defendant, Andersen. Officers interviewed 130 potential witnesses and suspects between November 11 and December 4, 1985.

On November 25, 1985, police received a report from a neighbor that young boys frequented Andersen's residence and that the neighbor suspected illegal activity. The neighbor recognized one of the boys, B.T., and gave his name to police. Officer Sklenar testified that because of this report, B.T. would have eventually been interviewed in the course of the child pornography ring investigation.

When B.T. was interviewed, he related his sexual contact with the defendant. B.T. also gave the interviewing officer the names of S.M. and J.M. Sklenar testified that S.M. and J.M.

would have been interviewed in the routine course of the continuing investigation. On cross-examination, Sklenar admitted that not all people known to police concerning the investigation were interviewed.

The trial court found that the police would have interviewed B.T. in the normal course of a child pornography ring investigation and that B.T. would have led officers to J.M. and S.M. The court ruled that the boys' testimony was admissible because it would have inevitably been discovered. Andersen argues that the State failed to meet its burden of proving by a preponderance of the evidence that the police would have interviewed B.T., absent the address book.

In determining the correctness of a ruling on a motion to suppress, the Supreme Court will uphold a trial court's findings of fact unless those findings are clearly wrong. In determining whether a trial court's findings on a motion to suppress are clearly erroneous, this court recognizes the trial court as the trier of fact and may take into consideration that the trial court has observed witnesses testifying regarding such motion. *State v. Sneed and Smith*, 231 Neb. 424, 436 N.W.2d 211 (1989); *State v. Marco*, 230 Neb. 355, 432 N.W.2d 1 (1988).

The "inevitable discovery" doctrine was adopted by the U.S. Supreme Court in *Nix v. Williams*, 467 U.S. 431, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). The doctrine applies where

"[t]he challenged evidence is in some sense the product of illegal governmental activity." [Citation omitted.] Of course, this does not end the inquiry. If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received.

(Emphasis omitted.) 467 U.S. at 444.

In a single-judge opinion, pursuant to Neb. Rev. Stat. § 29-824 (Reissue 1985), Judge Shanahan analyzed and explained the *Nix* rule in *State v. Evans*, 223 Neb. 383, 389 N.W.2d 777 (1986). His reasoning, which we adopt, stated:

If the State shows by a preponderance of the evidence that, disregarding any police misconduct in obtaining the

evidence in question, the disputed or controversial evidence would have been produced or obtained by proper police investigation entirely independent of the illegal investigative conduct, then such evidence is admissible pursuant to the "inevitable discovery" doctrine. . . . "[I]nevitable discovery" involves two lines of investigation, one tainted and the other lawful, but the lawful line of investigation is not consummated in production of evidence. However, by the requisite preponderance of evidence, the State must demonstrate that some lawful means of discovery, not an illegal investigation, would have produced the evidence in question, that is, such evidence inevitably would have been discovered without existence of any police misconduct.

(Emphasis omitted.) *Id.* at 391-92, 389 N.W.2d at 783.

The facts show two distinct lines of investigation leading to B.T. One, the search of Andersen's residence and confiscation of the address book, was unlawful. The other, the continuing routine investigation of the child pornography ring, was legal. Andersen argues that because not all possible witnesses were interviewed, the State could not prove that B.T., S.M., and J.M. would have been interviewed as part of the pornography ring investigation.

This argument ignores that the State need only prove by a preponderance of the evidence that the boys would have been discovered through the legal investigation. The child pornography ring investigation was obviously extensive and involved many victims and suspects, including the defendant. Sklenar testified that one purpose of the investigation was to obtain names of possible child victims of sexual abuse. Sklenar also testified that the information with respect to B.T. was not a "dead end" because there were no reports of failed attempts to locate him. In the finding that B.T., S.M., and J.M. would have eventually been interviewed in the routine course of the child pornography ring investigation, we cannot say the trial court was clearly wrong.

## CONSOLIDATION OF INFORMATIONS

Andersen next claims the trial court erred in granting the

State's motion to consolidate five informations for trial. All of the charges alleged Andersen committed improper sexual contact at his home with three preteenage boys. There was similarity of time, place, and acts, and all were interrelated. Moreover, each of the boys' testimony would be admissible in five separate trials, for corroborative purposes and to show Andersen's motive, intent, and design.

A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed in the absence of an abuse of discretion. If the offenses charged are of the same or similar character, or are based on the same act or transaction, the offenses may be joined in one trial. Neb. Rev. Stat. § 29-2002 (Reissue 1985). The right to separate trials is statutory and depends upon a showing that prejudice will result from a joint trial. The defendant bears the burden of proving that prejudice will result from a joint trial. See, *State v. Thompson,* 231 Neb. 771, 438 N.W.2d 131 (1989); *State v. Clark,* 228 Neb. 599, 423 N.W.2d 471 (1988); *State v. Vrtiska,* 225 Neb. 454, 406 N.W.2d 114 (1987).

After a hearing at which no evidence was presented, the trial court held that Andersen had not met his burden of proving that he would be prejudiced by the joinder. The joinder was granted.

The trial court did not abuse its discretion in ordering that five informations against the defendant be consolidated for trial.

### ADMISSION OF EVIDENCE

Four of defendant's assigned errors complain of rulings by the trial court on the admissibility of evidence. We begin the discussion of these assignments by remembering that it is within the trial court's discretion to admit or exclude evidence, and such rulings will be upheld on appeal absent an abuse of discretion. *State v. Blair,* 230 Neb. 775, 433 N.W.2d 518 (1988); *State v. Methe,* 228 Neb. 468, 422 N.W.2d 803 (1988).

Defendant complains that the State was permitted to improperly present evidence of (1) his homosexuality, (2) the sexual content of movies he showed to the victims, and (3) the fact that he had previously entertained teenage boys in his home. In his case in chief, Andersen's testimony verified the

State's evidence in regard to these items. He also admitted the sexual content of some of the movies the boys viewed in his residence was not appropriate for young boys. Introduction of evidence by the defense waives any objection to the earlier introduction of evidence on the same subject by the State. See, *Johnson v. Airport Authority*, 173 Neb. 801, 115 N.W.2d 426 (1962); *State v. Harper*, 218 Neb. 870, 359 N.W.2d 806 (1984). Even standing alone, the State's evidence was properly admissible because it corroborated the boys' testimony.

That the defendant is a homosexual and had permitted movies with questionable sexual content to be viewed by the victims before the defendant committed sexual acts upon them was relevant evidence. The evidence tended to show the defendant's motive, preparation, plan, and intent to commit the crimes at issue and was admissible. Andersen's sexual preference for males enhances the credibility of the victims' testimony that the defendant's acts were committed for sexual gratification.

The trial court did not abuse its discretion in admitting the State's evidence of Andersen's homosexuality, of prior entertaining of young boys in his home, or of the content of the films shown to the victims.

Andersen also complains that the trial court improperly admitted testimony of S.E., S.M.'s mother. Before trial, Andersen objected to the endorsement of S.E. as a witness. He argued that her testimony regarding allegedly pornographic materials taken to her home by Andersen would be irrelevant. The court permitted the endorsement.

S.E. testified, "He [Andersen] said that we could get in trouble because he had brung over a projector to our house and asked us to sell it for him." Andersen argues that statement improperly refers to pornography. S.E.'s testimony made no reference to pornography brought to her home by Andersen. The assignment of error in regard to S.E.'s testimony has no merit.

Andersen also complains that the trial court improperly permitted endorsement of two witnesses named French and Dawson, who were to testify as to a statement made by Andersen regarding police reports of other investigations. On

cross-examination, Andersen admitted he had made the statement. Witnesses French and Dawson were not called. This assignment of error has no merit.

In his last assigned error relating to the admission of evidence, Andersen claims the trial court erred in refusing to permit certain evidence of alleged false reporting. During cross-examination, Andersen sought to elicit testimony from the victim S.M. that his mother made a false report of a sexual assault incident to police. An offer of proof claimed that 3 years prior to the instant trial, S.E. reported to police that her husband, K.E., had sexually molested her niece. It was further claimed that S.E. later recanted the story and admitted she had lied.

The trial court refused to permit questioning of S.M. along this line because it was "very collateral" to the issue at hand. Andersen argues that this questioning was necessary to bolster his contention that the victims had fabricated their stories of his assaulting them. The fact that a mother fabricated a story is not an indication that 3 years later her son fabricated a similar story.

In any event, police reports of the alleged false reporting by S.M.'s mother were introduced in evidence. They show that her niece claimed that S.E.'s husband sexually molested the niece. They further show that the niece told S.E. about the matter, that S.E. and her husband argued, and that her husband claimed that S.E. told him that she was "going to get him [her husband] in trouble and accuse him of child molesting." The husband called the police. The niece told police her uncle had put his hand down the back of her panties and rubbed her buttocks area. At that time, S.E. told police that the niece had related to her the same story that the niece had given the police. After the uncle was arrested, the niece recanted her story. S.M. was aware of the niece's accusation at the time it occurred.

We cannot say that the trial judge abused his discretion in refusing to permit Andersen to question S.M. about his mother's alleged fabricated story.

The trial court did not abuse its discretion in any of its rulings on the admission of evidence. The defendant's assignments of error regarding evidentiary rulings are without merit.

## MOTION FOR MISTRIAL

Through the course of trial, the defendant made several motions for a mistrial. All were overruled. Andersen contends the trial court should have sustained his mistrial motions. He argues that several instances of alleged prosecutor misconduct occurred and that, while one incident may not be sufficiently prejudicial to grant a mistrial, the cumulative effect was prejudicial, and a mistrial was in order.

A mistrial is properly granted when an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and would thus result in preventing a fair trial. The decision of whether to grant a motion for mistrial is within the discretion of the trial court and will be upheld on appeal absent a showing of abuse of discretion. See, *State v. Byrd*, 231 Neb. 231, 435 N.W.2d 898 (1989); *State v. Fraser*, 230 Neb. 157, 430 N.W.2d 512 (1988). The instances described by the defendant were not prosecutor misconduct.

The court sustained the defendant's pretrial motion to prevent references to pornography and to other defendants charged with child pornography crimes. Several of the defendant's arguments for a mistrial are based upon the erroneous belief that the trial court prohibited the prosecution from bringing before the jury references to other children. Although Andersen attempted to keep from the jury references to other young boys' having visited his residence, the court permitted some of this type of evidence to be received in the trial. Again, the defendant, on direct examination, testified that young boys visited his residence, and thereby waived any objection to such evidence.

Andersen further argues that several answers to prosecution questions were grounds for a mistrial because they improperly referred to "porn" or to other defendants. At one time Officer Sklenar testified that he had interviewed additional witnesses and possible victims. The defendant complains that this is a reference to other defendants and a pornography "ring." However, the question asked of Sklenar was specifically limited to his investigation of "this case." Andersen also objects to statements regarding "porn" and the naming by S.M. during redirect examination of defendants charged with child

pornography crimes. Objections to these statements were overruled by the trial court because the defendant had questioned the witness on these points during cross-examination. During direct examination, S.E. mentioned that police had "started arresting from Lincoln to Omaha." Defendant's objection to the answer as not responsive to the question was sustained, and the jury was admonished to ignore the statement. All of the above rulings by the trial court were correct.

Finally, Andersen argues that a mistrial should have been granted because the prosecutor improperly inserted his opinion into questioning and made prejudicial innuendoes regarding the defendant. None of these incidents were properly objected to by Andersen. In his brief, Andersen has taken the statements out of context. Read in context, they are not improper, nor are they prejudicial.

Whether considered individually or cumulatively, these incidents are not prejudicial to the defendant and did not require the granting of a mistrial.

There was no abuse of discretion by the trial court in its refusal to sustain Andersen's motions for a mistrial.

## CORROBORATION

Andersen claims the trial court erred by finding that there was sufficient corroboration of the victims' testimony. In a sexual assault case the victim need not be independently corroborated on the particular acts constituting the sexual assault, but must be corroborated on the material facts and circumstances tending to support the victim's testimony about the principal fact in issue. *State v. Narcisse,* 231 Neb. 805, 438 N.W.2d 743 (1989); *State v. Antillon,* 229 Neb. 348, 426 N.W.2d 533 (1988).

The corroboration requirement was eliminated by the Legislature in 1989 Neb. Laws, L.B. 443, passed with an emergency clause and signed by the Governor on March 14, 1989. However, we find that the evidence in this case is clearly sufficient to corroborate the victims' testimony about their sexual assaults by the defendant.

How evidence of Andersen's homosexuality, of movie contents, and of other boys' being in Andersen's home

corroborates the victims' testimony has already been discussed. Each boy's testimony corroborates the testimony of the other two. All three boys testified as to the defendant's invitations to stay overnight and the fun places the defendant took them. Each boy related the sexually explicit content of the movies they were shown until late at night and testified of being awakened by the defendant's sexual acts. Two victims testified that the defendant required them to remove all but their underwear before sleeping in his bed with him. This evidence establishes a "modus operandi" and helps corroborate the victims' testimony. Andersen's testimony in large part also corroborated the victims', except he denied sexual misconduct.

The trial court was correct in finding that sufficient corroboration existed.

## MOTIONS FOR DIRECTED VERDICT AND FOR NEW TRIAL

The defendant claims the trial court erred in overruling defendant's motions for a directed verdict and for a new trial. Andersen argues that the case should have been dismissed, or a new trial granted, because of the discrepancy in the victims' testimony regarding the date of the assaults.

In a criminal case a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged, or evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Diesing*, 231 Neb. 132, 435 N.W.2d 190 (1989); *State v. Foster*, 230 Neb. 607, 433 N.W.2d 167 (1988).

The granting of or refusal to grant a motion for new trial is left to the discretion of the trial court, and in the absence of an abuse of that discretion, the determination will not be disturbed on appeal. *State v. Katzman*, 228 Neb. 851, 424 N.W.2d 852 (1988); *State v. Cottingham*, 226 Neb. 270, 410 N.W.2d 498 (1987).

Because Andersen makes the same arguments for both motions, they will be discussed together. The defendant's argument rests primarily upon the date discrepancy in the boys' testimony. J.M. testified that he was assaulted by the defendant in May of 1985. His testimony is that both S.M. and B.T. were

also staying with the defendant that night. His testimony is supported by that of his father. S.M. and B.T. also told of being entertained by the defendant when J.M. was present; however, they both testified that the incident occurred in July of 1984. All three boys testified that this night was the first time any of them had stayed overnight with the defendant. Other than the date, the boys' testimony of the details of the event are much the same. Andersen argues that the date discrepancy is so material as to defeat his convictions.

A variance in the date does not necessarily preclude conviction. See *State v. Wood*, 220 Neb. 388, 370 N.W.2d 133 (1985). This is especially true in cases where there is a minor victim who does not immediately complain to authorities. *Id.*

J.M. was assaulted only once, visited the defendant's residence a second time, and thereafter refused to stay overnight at Andersen's residence. S.M. and B.T. were assaulted numerous times over a period of many months. These three preteenage boys were forced to deal with a variety of emotions and fears. It is understandable that they would not be able to remember the exact dates of the assaults. Where time is not an ingredient of the crime, a variance between the information and the proof is not fatal if the date proved is within the statute of limitations. *State v. Wood, supra.* Clearly, the assaults on these boys occurred sometime between July 1984 and November of 1985. Andersen was charged by informations on January 23, 1986, well within the 3-year statute of limitations for any possible assault date. See Neb. Rev. Stat. § 29-110 (Reissue 1985).

We have reviewed each of Andersen's motions for a directed verdict and a new trial. The trial court was correct in denying them.

### JURY INSTRUCTION

Andersen claims the trial court erred in refusing to give his requested instruction on the defendant's theory of the case. The requested instruction stated that it was defendant's theory that each of the victims had "fabricated or [had] materially mis-stated facts which constitute elements of the count herein." Basically, the proposed instruction concerns the credibility of the witnesses. The trial court refused to give this instruction

because its substance was covered by other instructions being given and because it was too broad. The court reasoned that a witness could unintentionally misstate facts without an acquittal being required.

It is the duty of the trial court, upon request of the accused, to instruct the jury upon any valid defense if there is credible evidence to support it. *State v. Marco*, 230 Neb. 355, 432 N.W.2d 1 (1988); *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). However, the trial court may refuse to give a requested instruction where the substance of the request is covered in the instructions given. *State v. Samuels*, 205 Neb. 585, 289 N.W.2d 183 (1980); *State v. Bear Runner*, 198 Neb. 368, 252 N.W.2d 638 (1977). Jury instructions must be read as a whole, and if the instructions, when read together, correctly state the law, are not misleading, and adequately state the issues, there is no prejudicial error. *State v. Cole*, 231 Neb. 420, 436 N.W.2d 209 (1989); *State v. Reeves, supra.*

Instruction No. 12, given by the court, is the standard approved instruction on credibility of witnesses. It instructs the jury to consider, among other things, the witnesses' interest in the result of the suit; apparent bias; ability to remember and relate occurrences accurately; the extent of corroboration by other credible evidence; the reasonableness or unreasonableness of their statements; and all other evidence, facts, and circumstances proved tending to corroborate or contradict such witnesses. This instruction covers completely the substance of Andersen's requested instruction. Defendant's theory of the case could be argued based upon this instruction and the evidence.

The trial court committed no error by refusing to give Andersen's proposed jury instruction.

### CONSECUTIVE SENTENCES

In his final assignment of error, Andersen asserts that the trial court erred in imposing consecutive sentences. Andersen argues that the consecutive sentences are excessive because his victims had been subjected to this type of conduct before they met him.

A sentence imposed within the statutorily prescribed limits will not be disturbed on appeal unless there has been an abuse of

discretion. *State v. Camacho*, 231 Neb. 522, 437 N.W.2d 151 (1989); *State v. Benzel*, 220 Neb. 466, 370 N.W.2d 501 (1985); *State v. Tweedy*, 196 Neb. 246, 242 N.W.2d 626 (1976). It is within the discretion of the trial court to direct that sentences imposed for separate crimes be served consecutively. *Benzel, supra*; *Tweedy, supra*. The maximum possible penalty for Andersen was 115 years in prison and a $30,000 fine. When Andersen's sentences are added together, he will serve an indeterminate term of not less than 5 nor more than 10 years in prison. His sentences are within the statutory limits.

On the basis of two psychiatric examinations of the defendant, the trial court found that Andersen was not a mentally disordered sex offender. Neither the trial record nor the presentence investigation reflects any mitigating factors justifying lesser sentences for Andersen's criminal conduct as determined by the jury in its verdicts. If anything, considering the magnitude, number, and frequency of the crimes the record shows Andersen committed, and considering the impact upon the victims, as shown by the presentence investigation, more severe sentences might well have been justified.

Sexual assault on a child is an extremely serious and deplorable crime. Andersen's suggestion that he should receive a lesser penalty because he chose as his victims children whom he claimed had already been subjected to sexual contact is abominable. Andersen, in his brief, points to nothing in the record indicating that two of his victims were, in fact, previously subjected by others to the type of sexual abuse that Andersen inflicted upon them.

The evidence reflects that the third victim, when he was 7 or 8 years old, was molested once when a man placed his finger in the boy's rectum.

The trial court did not abuse its discretion in imposing some consecutive sentences.

We find that none of Andersen's assigned errors have merit. The convictions and sentences of the trial court are correct and are affirmed.

AFFIRMED.