STATE OF NEBRASKA, APPELLEE, V. VON O. EARY, APPELLANT.
454 N.W.2d 685

Filed May 4, 1990.    No. 89-672.

Steven Lefler, of Lefler & Flick, for appellant.

Robert M. Spire, Attorney General, and James H. Spears for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

A jury found defendant, Von O. Eary, guilty of count I, unlawful possession with intent to deliver a controlled substance, marijuana, and count II, possession of a controlled substance, cocaine. He was sentenced to imprisonment for terms of 4 to 6 years on count I and 1 to 2 years on count II, to be served concurrently.

Defendant has appealed, assigning as error that (1) the trial court overruled defendant's motion to suppress, (2) the trial court failed to sustain defendant's motion for a directed verdict, (3) the trial court imposed excessive sentences, and (4) the trial court failed to grant defendant's motion for mistrial. We affirm.

On November 2, 1988, police officers of the city of Omaha executed a search warrant for room No. 1052 at the New Tower Inn Motel at 7764 Dodge Street in Omaha. Present in the room at the time were the defendant and a Gale Wilkinson. The officers discovered and seized Eary's driver's license, with residue of cocaine on it; a pipe containing residue of crack cocaine; a plastic container containing baking soda, which was described during the trial as a substance that can be used to convert hydrochloride cocaine into crack cocaine; a bottle of

rubbing alcohol, about which there was testimony indicating it can be used as a heating device for the ignition of cocaine; a vial containing 20 milligrams of hydrochloride cocaine; a second pipe containing the residue of crack cocaine; a test tube, a spoon, surgical scissors, cotton balls, and cigarette papers; a screwdriver with a white substance on it; a baggie containing 8 grams of marijuana; four plastic bags containing approximately one-quarter pound of marijuana each; writings upon a legal pad and a business card alleged to represent records kept in the course of drug dealing; and over $15,000 in cash, $10,750 of which was found in a brown paper sack.

The affidavit for the issuance of the warrant was signed by two police officers and alleged that they had reasonable grounds to believe that cocaine and marijuana, drug administering instruments, and records and moneys pertaining to an illegal narcotics operation would be found.

This belief was based on information furnished to the police by various individuals. One such individual, identified as "Source #1," was a confidential informant who the police affiants alleged had proven to be reliable in the past. Source #1 had provided information and had made purchases of narcotics under the supervision of the narcotics unit which had resulted in the issuance of 10 search warrants and numerous arrests.

Source #1, on July 7, 1988, advised a lieutenant of the Omaha Police Division that a party by the name of Von Eary was dealing cocaine in the Omaha area and received his supply from a party in Phoenix, Arizona. The source had observed Eary in possession of 2 pounds of cocaine while Eary was living in an apartment in Omaha.

The informant, on July 20, 1988, provided the same lieutenant with two phone numbers, one in the name of Gale and the other in the name of a male party named R.J. Gale was alleged to be working at a lounge in Omaha and was alleged to be dealing "8-ball" quantities of drugs, and R.J. was alleged to be dealing unknown quantities of drugs which were directly supplied by Eary.

In checking one of the phone numbers, a member of the police department found it to be subscribed to by R.J. Riggs. The police records showed that on March 14, 1983,

information was received that Richard J. Riggs was dealing illicit narcotics in the Omaha area and was living at that time in Fremont, Nebraska.

On October 25, 1988, the police received information from an employee at the New Tower Inn Motel concerning a suspicious party staying at the motel. The informing party stated that a man identifying himself as Von Eary stayed at the motel October 22, 23, and 24 and that he paid for his room in cash on a daily basis, refused maid service, and made numerous local and some long-distance phone calls. After Eary checked out of the motel, employees found in the room a small eyeglass case which contained a small quantity of what they suspected to be marijuana. Eary later returned to the motel and claimed the case.

The list of phone numbers called by Eary included one of the two numbers that were earlier furnished by Source #1, who stated that "a party by the name of Gale would be contacted at that number by Von Eary, arranging the sale of cocaine." On November 2, 1988, one of the police affiants learned that the phone number was listed to a G. Wilkinson in Fremont, Nebraska.

On November 1, 1988, another police affiant was contacted by the front desk manager of the Ramada Inn Airport Motel. That person stated that a suspicious party by the name of Von Eary checked into the motel on October 29, 1988, stayed October 30 and 31, and was scheduled to check out on November 1. The manager was suspicious of Eary because he paid cash for his room on a daily basis, requested that his room not be cleaned by maid service, and made numerous local calls and one long-distance call. The manager also stated that on October 30 they had to wake Eary up at 1 o'clock in the afternoon to see if he was going to stay another night.

On November 2, 1988, a police officer contacted the Ramada desk manager and was supplied with several phone numbers that Eary had called. One of the numbers called was the one Source #1 had indicated was in the name of R.J., who was being supplied cocaine by Eary.

Another police officer was contacted on November 1, 1988, by the management of the New Tower Inn Motel concerning a

party by the name of Von Eary, who registered on November 1, paid cash for his room, and used an "instant cash card" for identification. It was also discovered that the same phone number for R.J. had been called on November 2, presumably by Eary.

The officers making the affidavit also stated that based on numerous past narcotics investigations made by them within the last year, they have found that narcotics dealers frequently will pay for motel rooms in cash, will extend their stays day-by-day with cash payments, and will frequently refuse maid service so as to prevent observation of drug activities.

The motion to suppress sought to challenge the admissibility of evidence seized during the execution of the search warrant issued on the basis of the foregoing affidavit. The only evidence introduced at the hearing on this motion was the affidavit, the search warrant, and the inventory and return for the physical evidence discovered.

Under the first assignment of error, the defendant contends that the affidavit requesting the search warrant lacked probable cause and that the no-knock entry authorized was improper.

This court has adopted the "totality of the circumstances" test articulated by the U.S. Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), *reh'g denied* 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453, to evaluate the sufficiency of an affidavit used to obtain a search warrant. *State v. Sneed and Smith*, 231 Neb. 424, 436 N.W.2d 211 (1989). Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. *State v. Armendariz*, 234 Neb. 170, 449 N.W.2d 555 (1989); *State v. Sneed and Smith, supra.*

In determining probable cause for issuance of a search warrant, the issuing magistrate is to make a practical, commonsense decision whether, given the totality of all the circumstances set forth in the affidavit before him or her, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Sneed and Smith, supra; Illinois v. Gates, supra.* See, also, *State v. Armendariz, supra.* The duty of the

reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Doubtful or marginal cases should be determined largely by the preference to be accorded warrants. *State v. Sneed and Smith, supra.* See, also, *State v. Cullen*, 231 Neb. 57, 434 N.W.2d 546 (1989).

In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold a trial court's findings of fact unless those findings are clearly erroneous. *State v. Garcia, ante* p. 53, 453 N.W.2d 469 (1990); *State v. Juhl,* 234 Neb. 33, 449 N.W.2d 202 (1989).

In making this determination, this court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that the trial court has observed the witnesses testifying in regard to such motions. *State v. Garcia, supra.*

Defendant argues that the search warrant was issued only upon the assumption that defendant fit the profile of a drug dealer. Since probable cause exists independent of the drug dealer profile referred to in the affidavits, it is unnecessary to consider appellant's challenge in that regard. He also insists that the earlier facts set forth in the affidavit relating to information about the defendant received in July were stale and therefore unreliable.

It is true that we have said that proof of probable cause justifying the issuance of a search warrant generally must consist of facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time. *State v. Hodge and Carpenter*, 225 Neb. 94, 402 N.W.2d 867 (1987); *State v. Kallos*, 193 Neb. 113, 225 N.W.2d 553 (1975). Whether the proof satisfies this test is determined by the circumstances in each case. *State v. Hodge and Carpenter, supra; State v. Kallos, supra.*

Under the "totality of the circumstances" analysis, we have no problem affirming the trial court's finding of probable cause. There were facts alleged in the affidavit which substantiated that defendant was dealing drugs as recently as July of the same year in which the warrant was issued. The police had reliable information from citizen informants within

a day or two of the issuance of the search warrant that defendant was engaging in the same activities as he was 4 months earlier, i.e., making phone calls to known drug contacts, moving from motel to motel, refusing maid service to his room, and being in possession of suspected marijuana.

Defendant's objection to the no-knock feature of the search warrant is without merit. As recently as *State v. Armendariz*, 234 Neb. 170, 449 N.W.2d 555 (1989), this court reaffirmed the constitutionality of Neb. Rev. Stat. § 29-411 (Reissue 1989), which sanctions a forcible entry into a dwelling if the magistrate issuing the warrant has inserted a direction to the officer executing it that the officer need not give notice of entry. We held that "the court can take judicial notice that substances such as cocaine may be easily and quickly disposed of by flushing down a drain." *State v. Armendariz, supra* at 174, 449 N.W.2d at 558. The affidavit in this instance sets forth facts in support of the authorization and justification of the no-knock entry.

Defendant also asserts, without support by argument, that the no-knock provision of this warrant violates article I, § 7, of the Constitution of the State of Nebraska. As a general rule, we do not consider errors asserted but not argued. However, we note in passing that this particular section of the Nebraska Constitution tracks exactly the provisions of the fourth amendment to the Constitution of the United States.

In *State v. Meyer*, 209 Neb. 757, 311 N.W.2d 520 (1981), this court concluded that neither *Ker v. California*, 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963), nor *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), nullifies the provision of § 29-411 of the Nebraska statutes relating to no-knock warrants and that such provision does not offend the fourth amendment prohibition against unreasonable searches and seizure. The same ruling would apply to the provision in the Constitution of the State of Nebraska.

In defendant's second assignment of error, he argues that the trial court erroneously permitted the testifying officer to express an opinion that defendant was engaged in dealing drugs, that there was insufficient evidence to establish the elements of possession of a drug with the intent to deliver, and

that, therefore, his motion for a directed verdict should have been sustained.

In a criminal case a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged, or evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989); *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989).

In the first place, the record fully supports the experience and expertise of the officer giving that opinion. Secondly, during cross-examination of an earlier witness for the State, the following questions and answers were given:

Q [by defense counsel]. Officer Sanchelli, cutting to the chase, you think Von's guilty, right? I mean, you just said he's a profitable drug dealer. You think he's guilty, right?

A. From the evidence I saw the day of the search warrant, I have my opinion.

Q. You think he's guilty, right? You can say it if you think he's guilty.

A. I do, yes.

Finally, in *State v. Salas*, 231 Neb. 471, 475, 436 N.W.2d 547, 550 (1989), this court said:

Circumstantial evidence is sufficient to support a finding of guilty of possession of a controlled substance with intent to distribute, deliver, or dispense. [Citations omitted.] Possession of a quantity of a controlled substance in a form customarily used for delivery or distribution will support an inference of possession with intent to deliver or distribute.

There is no merit to this assignment of error.

It is well established that a sentence imposed within statutorily·prescribed limits will not be disturbed on appeal absent an abuse of discretion. *State v. Nelson, ante* p. 15, 453 N.W.2d 454 (1990).

Possession of a controlled substance with the intent to deliver is a Class III felony, with a prescribed sentence of imprisonment of from 1 to 20 years. Possession of cocaine is a Class IV felony, for which a term of imprisonment of up to 5 years is authorized.

The courts are now recognizing that possession of controlled substances, to say nothing of possession with the intent to deliver, is not a victimless crime. There was no abuse of discretion by the sentencing court.

Finally, defendant argues that he should have been granted a mistrial because of misconduct by the prosecutor. This complaint borders on the ridiculous.

Defense counsel was inquiring of a police officer witness "how things work a little bit in the county attorney's office," relating to when and under what circumstances the county attorney may send a police officer out to investigate a matter. The prosecuting attorney objected to the form of the question as calling for speculation and a conclusion which "this witness can't make." The prosecuting attorney went on to say, "He [defense counsel] can ask me if he wants and I will tell him." The objection was sustained, but defense counsel persisted and asked, "Does that mean I can ask [the prosecuting attorney] then?" The prosecuting attorney then answered by stating, "If you want to put me on the stand as a witness, I will be more than happy to tell you everything you want to know about your defendant."

Defense counsel then moved for a mistrial "based upon the prosecutor's remark implying that there is some sort of felony record or some sort of record against Mr. Eary that the jury is not privy to." In denying the motion for a mistrial, the court inquired of counsel if he wanted the court to admonish the jury, and upon receiving an affirmative answer, the court directed the jury that it was not to draw any inference that there was any existing criminal record of the defendant.

A mistrial is properly granted only when an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and would thus result in preventing a fair trial. The decision of whether to grant a motion for mistrial is within the discretion of the trial court and will be upheld on appeal absent a showing of abuse of discretion. *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989). See, also, *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989); *State v. Jones*, 232 Neb. 576, 441 N.W.2d 605 (1989).

The judgment of the district court is affirmed.

AFFIRMED.