STATE OF NEBRASKA, APPELLEE, V. MICHAEL R. YAGER, APPELLANT.

461 N.W.2d 741

Filed November 2, 1990.    No. 89-790.

Larry F. Fugit for appellant.

Robert M. Spire, Attorney General, and Alfonza Whitaker for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Claiming that the Sarpy County District Court erred in admitting evidence of his sexual contact with two young males other than the victim, Michael R. Yager appeals his jury conviction for sexual assault of a male child. We affirm.

The defendant was born on April 30, 1957. He babysat a number of small children at his mother's residence in LaVista, where he resided. Yager began babysitting 8-year-old C.M. in August 1988. On December 15, 1988, C.M. told his mother and stepfather that the defendant touched him on his penis and that it hurt.

At trial, the child testified that Yager touched his penis on five or six occasions. C.M. testified that on the last occasion, his jeans were off and Yager reached in C.M.'s underpants and pulled on his penis to the extent that it hurt him. On the other occasions, C.M. said, the defendant rubbed C.M.'s penis. The boy further testified that on one occasion, Yager unbuttoned his own pants and made the boy rub Yager's penis. The victim told a police officer that the incidents occurred from Thanksgiving Day of 1988 to and including December 15, 1988.

A police officer testified that when she interviewed the defendant on December 16, he told her that when the victim experienced a stomach ache, the defendant rubbed the boy's stomach to soothe him. The defendant said his hand may have slipped while rubbing the boy's stomach and accidentally touched the boy's penis. At trial, Yager denied ever touching C.M.'s penis.

Yager was charged by amended information in the district court for Sarpy County with three counts of sexual assault of a child. Upon the defendant's motion, the trial court dismissed two of the counts.

Sexual assault of a child is prohibited by Neb. Rev. Stat. § 28-320.01 (Reissue 1989), which provides: "(1) A person commits sexual assault of a child if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older. (2) Sexual assault of a child is a Class IV felony." Neb. Rev. Stat. § 28-318 (Reissue 1989) defines "sexual contact" as

> the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts. Sexual contact shall also mean the touching by the victim of the actor's sexual or intimate parts or the clothing covering the immediate area of the actor's sexual or intimate parts when such touching is intentionally caused by the actor. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party.

Yager was found guilty by a jury of one count of sexual assault

of a child. The defendant was sentenced to a 4-month term of imprisonment, with credit for the time spent in jail awaiting disposition of his case.

Before trial, the district court overruled Yager's motion in limine to prevent evidence of his sexual relations with two other witnesses. At trial, over Yager's objection, one of the witnesses, A.L., testified that when he was 8 years old and while Yager was babysitting him, Yager took him downstairs, where he touched and fondled him. A.L. further testified that until he was 21 or 22 years old, he had a sexual relationship with the defendant and that during that time, he and the defendant had approximately 100 sexual contacts. The defendant's last sexual contact with A.L. was 6 to 7 years prior to the defendant's trial.

The other witness, A.G., who was 23 years old, testified over Yager's objection that when he was 12 years of age, Yager gave him a ride in his car and molested him. A.G. testified that on that occasion, the sexual contact was limited to touching and that he and Yager both had their pants off. The witness related that Yager and he continued their relationship for 2 to 2¹/₂ years. During that period, Yager and A.G. had 20 to 30 sexual contacts or penetrations, according to A.G. At the time of trial, A.G. was being treated in the Lincoln Regional Center after being sentenced as a mentally disordered sex offender to a term of imprisonment for sexually assaulting minor males. The last sexual contact between Yager and A.G. would have been within 10 years of Yager's trial.

Yager's two assignments of error may be consolidated to allege that the trial court erred by allowing A.L.'s and A.G.'s testimony into evidence.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Neb. Rev. Stat. § 27-404(2) (Reissue 1989). The purposes set forth in § 27-404(2) are illustrative only and are not intended to be exhaustive or mutually exclusive. *State v. Schaaf*, 234 Neb. 144, 449 N.W.2d 762 (1989). Section 27-404(2) is an

inclusionary rule which permits the use of evidence of other crimes, wrongs, or acts if such is relevant for any purpose other than to show the defendant's propensity or disposition to commit the crime charged. *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990).

In reviewing the actions of a trial court in admitting evidence of other crimes under § 27-402(2) to determine if there was unfair prejudice in the admission of the evidence, an appellate court considers (1) whether the evidence was relevant, (2) whether the evidence had a proper purpose, (3) whether the probative value of the evidence outweighed its potential for unfair prejudice, and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the purpose for which it was admitted. See, *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988); *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989); *State v. Boppre*, *supra*.

Yager first asserts that A.L.'s and A.G.'s testimony concerning sexual contacts with him which he claims occurred 15 to 20 years and 11 years prior to trial, respectively, was totally irrelevant because the testimony concerned events which were too remote in time to have any relevance.

Evidence that Yager had sexually assaulted other young boys and continued those relationships over a number of years was relevant to prove Yager's motive, intent, and sexual arousal or gratification and the absence of mistake or accident when he had sexual contact with C.M. The evidence had the tendency to make the existence of any of those items relating to the crime with which Yager was charged more probable than it would be without that evidence. See Neb. Rev. Stat. § 27-401 (Reissue 1989). The real question here is whether the events are so remote in time as to be irrelevant.

The admissibility of evidence concerning other conduct must be determined upon the facts of each case, and no exact limitation of time can be fixed as to when other conduct tending to prove intent to commit the offense charged is too remote. *State v. Ruyle*, 234 Neb. 760, 452 N.W.2d 734 (1990). Indeed, this court has held that a trial court did not abuse its discretion in admitting evidence of conduct similar to the crime charged

even though the conduct occurred over 10 years before the crime charged was committed. See *State v. Kern*, 224 Neb. 177, 397 N.W.2d 23 (1986).

> [R]emoteness, or the temporal span between a prior crime, wrong, or other act offered as evidence under Rule 404(2) and a fact to be determined in a present proceeding, goes to the weight to be given to such evidence and does not render the evidence of the other crime, wrong, or act irrelevant and inadmissible.

*Schaaf, supra* at 160, 449 N.W.2d at 772.

Yager's assertion that A.L.'s and A.G.'s testimony concerned events which were too remote in time is without merit. It is initially noted that the defendant is mistaken regarding the timing of those events. A.L. testified that his sexual relationship with Yager lasted until he was 21 or 22 years of age. Since he was 28 years of age at the time of trial, the last incident was 6 or 7 years prior to the events at issue, not 15 to 20 years as Yager asserts. Likewise, A.G. stated that his last sexual contact occurred with the defendant when A.G. was 14 to 14$^{1}$/$_{2}$ years of age. This would be approximately 8$^{1}$/$_{2}$ to 9 years before C.M. was sexually assaulted by Yager.

The question of whether evidence of other conduct otherwise admissible under the provisions of § 27-402(2) is too remote in time is largely within the discretion of the trial court. While remoteness in time may weaken the value of the evidence, such remoteness does not, in and of itself, necessarily justify exclusion of the evidence. *State v. Rincker*, 228 Neb. 522, 423 N.W.2d 434 (1988).

The crux of Yager's argument is that the evidence was offered to prove his propensity or disposition to commit sexual assault of a child. In *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989), the defendant was convicted of two charges of first degree sexual assault and three charges of sexual assault of a child. On appeal, the defendant alleged that the State was improperly permitted to present evidence of his homosexuality, the sexual content of movies he showed to the victims, and the fact that he had previously entertained teenage boys in his home. In response, this court asserted: "The evidence tended to show the defendant's motive, preparation, plan, and intent to

commit the crimes at issue and was admissible." *Id.* at 202, 440 N.W.2d at 215. This court further asserted that the defendant's "sexual preference for males enhances the credibility of the victims' testimony that the defendant's acts were committed for sexual gratification." *Id.*

Applying *Andersen, supra,* to this case, the evidence at issue tended to show Yager's motive and intent to commit sexual assault on C.M. As was the case in *Andersen,* the evidence is probative on the issue of the defendant's sexual arousal or gratification, an element of the offense of sexual assault of a child. See §§ 28-318(5) and 28-320.01.

Furthermore, the defendant's intentional sexual contacts with A.L. and A.G. were also relevant to prove that the defendant's sexual contact with the victim was not accidental, as he related to a police officer. See *State v. Ruyle, supra* (the defendant's threats to burn or torch an apartment were relevant to show that the fire was not an accident). Thus, the trial court did not abuse its discretion in determining that the evidence was offered for a proper purpose. See *Ruyle, supra* (due to proper purposes for admission of other conduct, court did not abuse its discretion).

Section 27-404(2) is subject to the overriding protection of Neb. Rev. Stat. § 27-403 (Reissue 1989). *State v. Craig,* 219 Neb. 70, 361 N.W.2d 206 (1985). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." § 27-403. The defendant lastly asserts that any probative value A.L.'s and A.G.'s testimony may have had was outweighed by its prejudicial effect and should have been excluded under § 27-403.

In view of the sexual nature of the crime charged, evidence of Yager's other sexual contacts with young males was highly probative on the issue of Yager's sexual arousal or gratification, as well as his intent and motive, and to establish that it was no accident that he touched the victim's penis. While the evidence was prejudicial, as this court has stated:

> Most, if not all, items which one party to an action

offers in evidence are calculated to be prejudicial to the opposing party; therefore, it is only "unfair prejudice" with which [§ 27-403 is] concerned. In the context of § 27-403 such prejudice means a tendency to suggest a decision on an improper basis.

*Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 439, 345 N.W.2d 300, 306 (1984). After reviewing the record, we cannot say that the prejudice was such as to suggest a decision on an improper basis. The trial court did not abuse its discretion in determining that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. See *State v. Jacobs*, 226 Neb. 184, 410 N.W.2d 468 (1987) (balancing the need for evidence of other crimes, wrongs, or acts against the possible resulting prejudice is within the discretion of the trial court).

Finally, we conclude that the trial court correctly instructed the jury to consider the evidence only for the purpose for which it was admitted. The trial court instructed the jury that the testimony of A.L. and A.G. should be considered only for the limited purpose of establishing the defendant's state of mind. The court further instructed the jury that if it found from other evidence, beyond a reasonable doubt, that the defendant engaged in the particular conduct alleged to have occurred on December 15, 1988, it could consider the testimony of A.L. and A.G. as to whether such conduct constituted sexual contact as defined in a previous instruction.

The trial court did not err in ruling that the evidence of the defendant's sexual relations with A.L. and A.G. was relevant. The evidence was admitted for a proper purpose and did not unfairly prejudice the defendant. The jury was properly instructed on the use of that evidence. Therefore, the defendant's assignments of error are meritless.

The defendant's conviction for sexual assault of a child is affirmed.

AFFIRMED.

SHANAHAN, J., dissenting.

Even the conviction of one accused of pedophilia should be based on evidence admissible in accordance with the letter and spirit of the Nebraska Evidence Rules, a result very unlikely in

view of today's decision.

At the core of the problem caused by the majority's opinion is a misunderstanding concerning "character" and, therefore, misapplication of Neb. Evid. R. 404(2), which states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Additionally, according to Neb. Evid. R. 401: "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Consequently, Neb. Evid. R. 402 provides in part: "Evidence which is not relevant is not admissible." The preceding excerpts from the Nebraska Evidence Rules are virtually verbatim counterparts of the corresponding Federal Rules of Evidence.

The focal point of Rule 404(2) is "character," which may be defined as a propensity or disposition to act in a particular manner. In relation to Rules 401 and 402, Rule 404(2) pertains to relevancy of evidence and has been characterized as a "specialized rule of relevancy." 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[08] at 404-58 (1989). In *State v. Craig*, 219 Neb. 70, 77, 361 N.W.2d 206, 212 (1985), we acknowledged that "Rule 404(2) of the Nebraska Evidence Rules . . . is an 'inclusionary rule,' permitting the use of relevant, specific acts for all purposes except to prove character of a person in order to show that such person acted in conformity with character." Therefore, Rule 404(2) permits introduction of evidence concerning a defendant's "other crimes, wrongs, or acts" if such evidence complies with the relevancy definition in Rule 401 and unless the sole purpose for the offer is to establish a defendant's propensity to act in a particular manner and thereby supply a basis for the inference that the defendant committed the crime charged.

The general exclusion of evidence of other crimes or wrongs in criminal prosecutions rests on sound policy and

constitutional concerns. Introduction of evidence that the defendant committed other crimes and unwholesome acts may lead jurors to return a verdict of guilty for reasons other than finding all the elements of the alleged crime beyond a reasonable doubt. Although reasonable doubt of guilt exists on this occasion, the jury might conclude the defendant is a "bad man," who deserves punishment regardless of his innocence of the crime charged and warrants imprisonment to prevent future maleficent acts. Such results defeat the letter and policy of substantive criminal law mandating conviction based upon a non-vague concrete statute; instead, jurors have found the defendant guilty based upon past unsavory acts without necessarily violating any criminal statute in the process.

Alternatively, and just as improperly, upon learning that the accused committed other crimes or wrongs, jurors might infer that the defendant has a propensity to commit crimes and probably committed this crime as charged.

Patterson, *Evidence of Prior Bad Acts: Admissibility Under the Federal Rules*, 38 Baylor L. Rev. 331, 332-33 (1986).

As noted by the Supreme Court in *Michelson v. United States*, 335 U.S. 469, 475-76, 69 S. Ct. 213, 93 L. Ed. 168 (1948), a decision before adoption of the Federal Rules of Evidence:

The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

See, also, *United States v. Phillips*, 599 F.2d 134, 136 (6th Cir. 1979) (concerns expressed by Fed. R. Evid. 404(b) are "(1) that

the jury may convict a 'bad man' who deserves to be punished—not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes, he probably committed the crime charged").

Thus, Rule 404(2) forbids a prosecutor's introducing evidence of a defendant's uncharged misconduct to support a general inference of bad character which increases the probability that the defendant committed the crime charged. As previously mentioned, for admissibility under Rule 404(2), a defendant's other crimes, wrongs, or acts must have probative value in reference to the crime charged against the defendant. A suitable test for admissibility of a defendant's other acts as "extrinsic offense evidence" is found in *United States v. Beechum,* 582 F.2d 898, 910-11 (5th Cir. 1978):

> The rule [Fed. R. Evid. 404(b)] follows the venerable principle that evidence of extrinsic offenses should not be admitted solely to demonstrate the defendant's bad character. Even though such evidence is relevant, because a man of bad character is more likely to commit a crime than one not, the principle prohibits such evidence because it is inherently prejudicial. . . . Without an issue other than mere character to which the extrinsic offenses are relevant, the probative value of those offenses is deemed insufficient in all cases to outweigh the inherent prejudice. Where, however, the extrinsic offense evidence is relevant to an issue such as intent, it may well be that the evidence has probative force that is not substantially outweighed by its inherent prejudice. If this is so, the evidence may be admissible.
>
> What the rule calls for is essentially a two-step test. First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403.

The *Beechum* court continued:

> In measuring the probative value of the evidence, the

judge should consider the overall similarity of the extrinsic and charged offenses. If they are dissimilar except for the common element of intent, the extrinsic offense may have little probative value to counterbalance the inherent prejudice of this type of evidence. Of course, equivalence of the elements of the charged and extrinsic offenses is not required. But the probative value of the extrinsic offense correlates positively with its likeness to the offense charged. Whether the extrinsic offense is sufficiently similar in its physical elements so that its probative value is not substantially outweighed by its undue prejudice is a matter within the sound discretion of the trial judge.

582 F.2d at 915. See, also, *United States v. Green*, 648 F.2d 587, 592 (9th Cir. 1981):

It is unnecessary to specify the exception [in Fed. R. Evid. 404(b)] within which a particular line of inquiry or piece of evidence is admissible. It is enough that the evidence is relevant to an issue in the case other than a defendant's criminal propensity. It is, of course, for the trial court to make the initial determination of relevancy, and the evidence must be carefully scrutinized to determine probative value.

With the preceding as background, the majority's conclusion about admissibility of evidence regarding Yager's sexual contacts with males before the incident charged is irreconcilable with Rule 404(2). The crime charged against Yager was pedophilia in the form of criminal sexual contact with a child, that is, one who is at least 19 years of age subjects another person, who is 14 years of age or younger, to sexual contact. See Neb. Rev. Stat. § 28-320.01 (Reissue 1989). A.L., one of the State's witnesses, testified that he was 8 years old when he had his first sexual encounter with Yager, who, being 4 years older than A.L., was 12 years old at the time. Thus, the encounter 20 years before Yager's trial involved two preteens or near-adolescent boys, not a 19-year-old male and a male child under the age of 14 years. Of A.L.'s "100 sexual contacts" with Yager, how many occurred before Yager was 19 years of age? For that matter, how many sexual contacts occurred when A.L. was beyond 14 years of age, including the period when A.L. was

over 21 years of age? By the time that Yager was 19 years of age, A.L. was more than 14 years of age and, hence, no longer a child within the purview of § 28-320.01. Based on the age differential, sheer arithmetic precludes admissibility of sexual encounters between A.L. and Yager. Sexual encounters between Yager and A.L., when the latter was an adult, cannot be realistically characterized as pedophiliac activity by Yager. Consequently, ambiguity, even absolute uncertainty, regarding the timeframe of Yager's prior sexual contact with A.L. eviscerates reliability and probative value from the prior sexual contacts used as evidence against Yager. See *United States v. Biswell*, 700 F.2d 1310 (10th Cir. 1983) (vagueness in testimony about other acts renders reliability questionable and diminishes probative value). Moreover, without similarity between Yager's prior sexual contacts with A.L. and the criminal act charged against Yager, dissimilarity destroyed the requisite relevance for admissibility; hence, the evidence of Yager's prior sexual contact with A.L. was inadmissible. See *United States v. Tate*, 715 F.2d 864, 866 (4th Cir. 1983) (possession of a firearm on a previous occasion is irrelevant to the issue whether the defendant was in possession of a firearm on the date charged, and "the commission of the same bad act on a previous occasion is bound to have had the effect of tending to show that the defendant had the propensity to commit the crimes for which he was on trial").

A warning against seductive simplism in admission of "other acts" evidence is expressed in 22 C. Wright & K. Graham, Federal Practice and Procedure § 5240 at 479-80 (1978):

> Particularly to be deplored is what might be called the "smorgasbord" approach to analysis of other crimes evidence in which the court simply serves up a long list of permissible uses without any attempt to show how any of them are applicable to the case at hand. . . . What is to be avoided is the mere listing of possible uses in the hope that at least one will seem to the reader to be applicable to the facts of the instant case.
>
> . . . .
>
> . . . [C]ourts must be on guard to prevent the motive label from being used to smuggle forbidden evidence of

propensity to the jury.

Condemning mere lip service to the great potential for prejudice inherent in evidence of prior sexual conduct, the Supreme Court of Washington, in *State v. Saltarelli*, 98 Wash. 2d 358, 364, 655 P.2d 697, 700 (1982), criticized using "motive and intent as 'magic passwords whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in their names.' [Quoting from] *United States v. Goodwin*, 492 F.2d 1141, 1155 (5th Cir. 1974)." The *Saltarelli* court then agreed with the observation from Slough & Knightly, *Other Vices, Other Crimes*, 41 Iowa L. Rev. 325 (1956):

"When deciding the issue of guilt or innocence in sex cases, where prejudice has reached its loftiest peak, our courts have been most liberal in announcing and fostering a nebulous exception, offering scant attention to inherent possibilities of prejudice. Just when protection is most needed, the rules collapse."

98 Wash. 2d at 364, 655 P.2d at 700.

In the attempt to justify admissibility of Yager's sexual contacts with A.G., the majority's own language supplies the strongest reason and cogent argument against admissibility of evidence concerning Yager's "other crimes, wrongs, or acts," namely: "Evidence that Yager had sexually assaulted other young boys and continued those relationships over a number of years was relevant to prove Yager's motive, intent, and sexual arousal or gratification and the absence of mistake or accident when he had sexual contact with C.M." When the majority's verbal camouflage is removed, the preceding excerpt patently demonstrates that the evidence of Yager's previous sexual contacts pertained to his character, his propensity for sexual contact with another male, and as such, was inadmissible under Rule 404(2). "Motive" has been defined as " 'the reason that nudges the will and prods the mind to indulge criminal intent.' " *United States v. Beechum*, 582 F.2d 898, 912 n.15 (5th Cir. 1978) (quoting from Slough & Knightly, *supra*). Another court has suggested that "motive" is an "inducement, or that which leads or tempts the mind to indulge in a criminal act," *State v. Saltarelli, supra* at 365, 655 P.2d at 700, while still another court has stated: "Motive is an idea, belief or emotion that impels or

incites one to act in accordance with his state of mind or emotion," *People v. Gibson*, 56 Cal. App. 3d 119, 129, 128 Cal. Rptr. 302, 308 (1976). Thus, the majority uses the "motive" mask to disguise inadmissible evidence of Yager's character and propensity for particular sexual conduct. In Yager's case, "motive" is a mistaken label to conceal the true nature of the "other acts" evidence—"propensity evidence under a different name." R. Lempert & S. Saltzburg, A Modern Approach to Evidence § 2 at 217 (1977). In *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985), to rebut a defendant's defense or claim that, while frolicking with the victim on a couch, he accidentally pulled down the pajama bottoms of the victim, his 13-year-old daughter, we approved admissibility of evidence that the defendant, on several occasions before the sexual assault of the victim identified in the criminal charge, had disrobed the victim for the purpose of sexual contact. However, in Yager's case, the participants in the previous sexual activity were not the subject victims in the charge against Yager. Consequently, testimony from A.L. and A.G. was unquestionably evidence concerning Yager's character and propensity for sexual contact with another male and, therefore, inadmissible under Rule 404(2).

Next, the majority suggests four safeguards against unfair prejudice. One of the suggested safeguards is an instruction informing the jury concerning the permissible use of "other acts" evidence. As one court has observed:

> We are not nearly so sanguine concerning the efficacy of jury instructions in curing the prejudice caused by the introduction of other crimes evidence. To tell a jury to ignore the defendant's prior convictions in determining whether he or she committed the offense being tried is to ask human beings to act with a measure of dispassion and exactitude well beyond mortal capacities. In such cases, it becomes particularly unrealistic to expect effective execution of the "mental gymnastic" required by limiting instructions, *Nash v. United States,* 54 F.2d 1006, 1007 (2d Cir.) (Learned Hand, J.), *cert. denied,* 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945 (1932), and "the naive assumption that prejudicial effects can be overcome by instructions to jury" becomes more clearly than ever "unmitigated

fiction," *Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring).

*United States v. Daniels*, 770 F.2d 1111, 1118 (D.C. Cir. 1985).

Chiding the notion that a limiting instruction eliminates unfair prejudice often existing in "other acts" evidence, the court in *People v. Gibson, supra* at 130, 128 Cal. Rptr. at 308 (1976), provided a realistic comment about use of "other acts" evidence:

> It is the essence of sophistry and lack of realism to think that an instruction or admonition to a jury to limit its consideration of highly prejudicial evidence to its limited relevant purpose can have any realistic effect. It is time that we face the realism of jury trials and recognize that jurors are mere mortals. Of what value are the declarations of legal principles with respect to the admissibility of other-crimes evidence . . . if we permit the violation of such principles in their practical application? We live in a dream world if we believe that jurors are capable of hearing such prejudicial evidence but not applying it in an improper manner.
>
> . . . The expectation that the jury could limit its use of ["other acts"] evidence as circumstantial evidence of defendant's *intent* and *motive* . . . is indeed an exercise in futility and illusory imagery.

(Emphasis in original.)

If we believe that a limiting instruction would result in a jury's analytically disregarding the unfair prejudice inherent in evidence of Yager's previous sexual conduct, then we have become residents of a fantasyland.

Nevertheless, the majority states that the jury was properly instructed on the use of evidence concerning Yager's sexual contact with A.L. and A.G. The court instructed the jury: "Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party." Later, the court instructed: "If you find from other evidence, beyond a reasonable doubt, that the defendant engaged in the particular conduct [with the victim] as alleged, you may then consider the testimony of

[A.L. and A.G.] as to whether such conduct constituted sexual contact as defined in a previous instruction." The instructions emphasized the use of Yager's prior acts to establish his propensity for sexual gratification with another male and thereby provided the inference that Yager, so disposed toward a particular form of sexual activity, probably committed the criminal sexual act charged against Yager. Thus, the instructions on use of "other acts" evidence ignited a flammable situation in Yager's case.

Curiously enough, the majority relies on two previous decisions of this court, *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989), and *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990), as support for the suggested four safeguards against unfair prejudice from "other acts" evidence. In both *Ryan* and *Boppre*, the presently suggested four safeguards against unfair prejudice were actually adopted as a four-part test or four requirements for admissibility. Referring to *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), in *Ryan*, we stated, "The U.S. Supreme Court has set out the *requirements for the admissibility of evidence* under Fed. R. Evid. 404(b), the equivalent of Neb. Evid. R. 404(2)" (emphasis supplied), 233 Neb. at 104, 444 N.W.2d at 631, and then expressed a four-part test which included, as requirements or conditions for admissibility, the four items which the majority has today characterized as safeguards against "unfair prejudice in the admission of the ['other acts'] evidence." In fact, the *Huddleston* Court did not enunciate four "requirements for the admissibility of evidence under Fed. R. Evid. 404(b)," but did consider means to minimize possible prejudice from admission of "other acts" evidence. Nonetheless, in *State v. Boppre, supra* at 953, 453 N.W.2d at 429, we were even more emphatic and explicit when we stated, "There are four requirements for the admissibility of evidence under" Rule 404(2) and then itemized the four requirements, today characterized as safeguards, by reference to *Ryan* as decisional support for the four requirements controlling admissibility of "other acts" evidence.

Thus, the four requirements for admissibility under Neb. Evid. R. 404(2), expressed in *Ryan* and *Boppre*, have, by some

undisclosed process, been today transformed into safeguards against unfair prejudice from evidence admitted. However, in the course of that metamorphosis, this court has failed to acknowledge our undeniable mistake which originated in *Ryan* and continues through *Boppre,* namely, the four-part test or four requirements for admissibility under Rule 404(2). Instead of facing and correctively eliminating the *Ryan-Boppre* error, we have succumbed to the ostrich syndrome. The four requirements for admissibility under Rule 404(2), expressed in *Ryan* and *Boppre,* still exist, are unjustified under the Nebraska Evidence Rules, and only tend to further confuse an already confused area surrounding Rule 404(2)—"Confusion worse confounded." To illustrate the confusion engendered by *Ryan* and *Boppre,* consider an all-too-likely situation. Suppose evidence is properly admitted on Monday in a weeklong jury trial, but on Friday, when the case is submitted to the jury, the trial court omits the mandatory *Ryan-Boppre* instruction, one of the requirements for admissibility of "other acts" evidence. What was admissible on Monday has become inadmissible on Friday when the case is submitted for a verdict without the mandatory instruction. The preceding situation evolves into something more bizarre in view of the rule that, in a jury trial of a criminal case, admission of inadmissible evidence results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. See *State v. Cox,* 231 Neb. 495, 437 N.W.2d 134 (1989). Which is it: requirements for admissibility, or safeguards against unfair prejudice? Consequent courtroom chaos defies description. What may be viewed as "today's achievement is only tomorrow's confusion."

The point in Yager's case is not pedophilia as criminal sexual contact, despicable and predatory sexual conduct toward children. Rather, the points are propensity as proof against an accused and a leapfrog approach to Rule 404(2) when admissibility of "other crimes, wrongs, or acts" is determined by reference to the exceptions expressed in the rule, an unnecessary exercise under an "inclusionary rule," without a precedent determination that the "other acts" evidence is relevant to an issue other than a defendant's propensity to act in

a particular manner. Indiscriminate use of evidence of "other crimes, wrongs, or acts" will take us down the path to an eventual confrontation with two basic constituents in a fair trial for one accused of a crime—the presumption of innocence and the State's burden of proof beyond a reasonable doubt. "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976). "The presumption of innocence in favor of the accused is a fundamental component of the due process right to a fair and impartial trial." *U.S. v. Apodaca*, 843 F.2d 421, 430 (10th Cir. 1988). As expressed in *United States v. Daniels*, 770 F.2d 1111, 1118 (D.C. Cir. 1985): "The exclusion of other crimes evidence is not simply a 'technicality' designed to prevent law enforcement personnel from doing their job; it reflects and gives meaning to the central precept of our system of criminal justice, the presumption of innocence." See, also, *United States v. Foskey*, 636 F.2d 517 (D.C. Cir. 1980). Further, "[l]est there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). "There is no presumption that such other-crimes evidence is relevant. . . . Otherwise, of course, the accused might be convicted because of his participation in the other crimes rather than because he is guilty beyond a reasonable doubt of the crime alleged." *United States v. Manafzadeh*, 592 F.2d 81, 86 (2d Cir. 1979). See, also, *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1985):

[T]he defendant must be tried for what he did, not for who he is. Under our system, an individual may be convicted only for the offense of which he is charged and not for other unrelated criminal acts which he may have committed. Therefore, the guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing.

The "other acts" evidence was inadmissible in Yager's case. Today's decision has done nothing to rein a runaway rule which threatens to trample on a defendant's right to a fair trial.